IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **WYNDHAM PROPERTIES II, LTD.,** § | |
| § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00166-BP |
| § | |
| **BUCA TEXAS RESTAURANTS, LP,** § | |
| § | |
| § | |
| **Defendant.** § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Attorneys' Fees, Brief in Support, and Appendix in Support (ECF Nos. 79, 80, 81); Plaintiff's Response and Brief in Support, and Appendix in Support (ECF Nos. 83, 84); and Defendant's Reply and Appendix in Support (ECF Nos. 87, 88). After considering the pleadings and applicable legal authorities, the undersigned **GRANTS** Defendant's Motion in part. ECF No. 79.

### I.   BACKGROUND

This case is a dispute over a commercial lease. Plaintiff Wyndham Properties II, Ltd. ("Wyndham") and Defendant Buca Texas Restaurants, L.P. ("Buca") entered into a Net Lease Agreement ("Lease") dated January 1, 2002 under which Buca leased the premises from Wyndham for a period of fifteen years (with options to extend the term) to operate a restaurant known as Buca di Beppo in Southlake, Texas. ECF No. 11 at 1. In 2016, the parties amended and reinstated the lease following Buca's default on its rental obligation and Wyndham's pending termination of the lease. *Id* at 2. This first amendment included, in part, a late fee penalty of five percent if Buca failed to pay any future rental payment within the first five days of the month. ECF No. 25 at 5.

Two years later in 2018, again as a result of Buca's default on its rental obligation and Wyndham's pending termination of the lease, the parties agreed to amend the lease by signing the second amendment. ECF No. 25 at 5. In 2019, Wyndham filed a petition in state court to evict Buca for failure to pay its annual consumer price index adjustment. ECF No. 25 at 5. After a jury trial, but before the verdict was read, the parties settled and executed a third amendment to the lease, which is the subject of the instant case. *Id.* This third amendment, in part, attempts to define the circumstances and process under which Wyndham can terminate the lease. *Id.* at 6.

In January 2022 another dispute arose over whether the conditions of the third amendment had been met, and Wyndham filed this lawsuit under Chapter 24 of the Texas Property Code, seeking forcible detainer of its premises as well as for breach of contract. ECF No. 11 at 1. On December 5, 2022, the parties tried the case to a jury in this Court that returned a verdict in favor of Buca. ECF No. 78. The Court ordered in its final judgment that "costs shall be borne by Plaintiff." *Id.* The parties' lease agreement contains a provision awarding attorneys' fees, court costs, and other litigation expenses to the prevailing party. ECF No. 26 at 103. The relevant provision states: "ATTORNEYS' FEES. Any attorney fees reasonably incurred by a successful party to the enforcement of this lease shall be paid by the unsuccessful party, which shall include court costs and other reasonable fees." ECF No. 81 at 42.

**II.  LEGAL STANDARDS**

Buca seeks reasonable attorneys' fees under Federal Rule of Civil Procedure 54(d)(2). Pursuant to Texas law, which applies in this diversity case, Buca is entitled to recover reasonable and necessary attorneys' fees as the prevailing party on its breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(8) (West 2022); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) ("[W]hen a prevailing party in a breach of contract suit seeks attorneys'

2

fees, an award of reasonable fees is mandatory under Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)."). "Although courts should consider several factors when awarding attorney fees, a shorthand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

This Court uses the "lodestar" method to calculate attorneys' fees. *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar equals the number of hours that an attorney reasonably spent on the case multiplied by an appropriate hourly rate, which is the market rate in the community for similar work. *See Smith v. Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking to recover attorneys' fees must establish the reasonableness of the number of hours expended through evidence of adequately recorded time records. *See Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993). The Court uses the time reflected in the records as a benchmark and then excludes any excessive, duplicative, unnecessary, or inadequately documented charges. *See id.* The hours remaining are those reasonably expended.

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). "However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, [488 F.2d 714 (5th Cir. 1974)]." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins,* 7 F.3d at 457.

### III.   ANALYSIS

Buca filed its Motion pursuant to federal and Texas law and the parties' lease allowing the prevailing party "fees reasonably incurred by a successful party to the enforcement of this lease."

3

ECF No. 80 at 1-2. Its counsel, Wick Phillips Gould & Martin ("Wick Phillips"), charged an average rate of $477 per hour for 365 hours of billable time and costs that total $165,340.98. ECF No. 81 at 122-129. In his supporting affidavit, Buca's lead counsel and proffered expert on attorney fees, Rusty O'Kane, testified that he reviewed all legal invoices, considered his personal involvement in the case in reviewing the entries, and interviewed any staff concerning "any potential perceived inefficiencies to come to a final opinion as to reasonableness of the fees incurred." ECF No. 87 at 7. He further stated that he appropriately staffed this matter with a partner, senior associate, junior associate, and legal assistant. *Id.* Mr. O'Kane routinely discounted monthly invoices sent to his client, and also discounted an additional ten percent of the total bill "to account for billing discretion-related issues" including those raised in Wyndham's response to the Motion. *Id.* at 8. Besides attorney fees and costs, Buca also seeks post judgment interest on the total award under the applicable federal rate pursuant to 28 U.S.C. § 1961. ECF No. 80 at 8.

Wyndham does not dispute the hourly rate, qualifications, or calculations used to determine the fee amount. Instead, it asserts that Buca unnecessarily removed this case to federal court when a forcible entry and detainer action could have quickly and inexpensively resolved the matter in state court. ECF No. 83 at 7-8. Wyndham asserts that Buca's time entries improperly include (1) block billing, (2) vague or ambiguous tasks, (3) clerical tasks, (4) duplication of multiple attorneys' time, (5) unsuccessful or unpursued claims, and (6) unreasonable reimbursement of costs for online research, vague delivery entries, and lunch during trial. The Court considers each argument in turn.

### A. Reasonable Hours Expended through Summary Judgment

To begin, Wyndham argues that the hours Buca's counsel spent on this case were unreasonable, in part, because of Buca's decision to remove what essentially is a small claim

eviction case to federal court. Wyndham cites Mr. O'Kane's affidavit opposing Wyndham's Motion for Summary Judgment in support of its argument:

> [Wyndham's counsel] requests $40,321.25 as reasonable and necessary fees with regards to Plaintiff's Motion for Summary Judgment…. [B]ased on my familiarity with rates charged in Dallas and Tarrant County, Texas for similar types of litigation by attorneys of comparable skill, it is my opinion that the number of hours multiplied by the (unsupported) rates provided in the Bettinger Declaration is neither reasonable nor necessary for plaintiffs pursuing this type of dispute (small claims eviction matter)….

ECF No. 29 at 4. Recognizing that Mr. O'Kane testified that $40,321.25 is neither reasonable nor necessary for the work that Wyndham's counsel undertook through the filing of its Motion for Summary Judgment, the Court cannot award Buca over $70,000 for the fees that it incurred through the same filing of its own Motion for Summary Judgment. ECF No. 81 at 122-125. Accordingly, the Court reduces the fees for the legal work that Buca's counsel performed through the filing of Buca's Motion for Summary Judgment to $40,320.25, which is the most that Mr. O'Kane's testimony quoted above would support as a reasonable fee through the filing of that Motion.

    **B.**    **Buca's choice to litigate in federal court**

Wyndham argues that even though Buca was entitled to remove this case to federal court it should not recover all associated fees because doing so was unreasonable and unnecessary. ECF No. 83 at 6-8. Wyndham provides examples of what appropriate attorneys' fees would have been had the case remained in state court and asserts that these amounts are the true measure of reasonableness for Buca's attorney fees in this case. *Id.* at 8. However, Wyndham offers no authority, and the Court is aware of none, which limits the amount of attorney fees recoverable in a case removed to federal court to what the fees would have been if the case had not been removed.

The Court determined that Buca's removal was proper and denied Wyndham's Motion to Remand. ECF No. 16. Moreover, there is no way of knowing how the facts in this case would have played out to a state court jury, and whether the party that did not prevail would appeal. This uncertainty leaves the Court without any real indication of what Buca's fees would have been in a state court case on the issues tried here. However, it is unnecessary to play through hypothetical scenarios because Buca was within its rights to remove the case and should not be penalized for doing so. Accordingly, the Court declines to further reduce Wick Phillips' fees because Buca chose to litigate this case in federal court.

### C.     Block Billing

"The term 'block billing' refers to the disfavored 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *4 n.5 (N.D. Tex. July 1, 2015) (quoting *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011)). Block billing "prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Id.* However, "most courts that have addressed block billing have concluded that denying all block-billed attorney's fees is not appropriate." *Bramlett v. Medical Protective Co. of Fort Wayne, Ind.*, No. 3:09-CV-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (citing *Trulock v. Hotel Victorville*, 92 F. App'x 433, 434 (9th Cir. 2004) (holding that block billing "is not a basis for refusing to award attorneys' fees")). "[M]any courts reviewing block-billed time entries have performed a percentage reduction either in the number of hours or in the lodestar figure, typically ranging from 10% to 30%." *Bramlett*, 2010 WL 3294248, at *3 (emphasis added).

6

Although counsel is "not required to record in great detail how each minute of his time was expended ... at least counsel should identify the general subject matter of his time expenditures." *Thermotek, Inc. v. Orthoflex, Inc.*, Nos. 3:11-CV-870-D, 3:10-CV-2618-D, 2016 WL 6330429, at *9 (N.D. Tex. Oct. 27, 2016) (noting the fee applicant "must present detailed time records of the hours expended by each lawyer indicating the nature of the particular work done by each, but these records do not need to be perfect") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).

After reviewing the entire record, Wick Phillips' entries include the attorney's initials, date, number of hours expended, and a brief description of the work performed. *See* ECF No. 81 at 122-129. Further, the block-billed entries are not for large amounts of time. Often, Buca's entries are for fewer than six hours. *Id.* The longer time entries offer more substantive, detailed descriptions of the different types of work performed during those periods by particular lawyers. *Id.* The Court finds that the block-billed time entries do not make it "impossible to conduct meaningful review and determine the precise number of hours that should be reduced ...." *Barrow,* 2005 WL 6789456 at *12. Therefore, the Court does not reduce the fees claimed due to block billing.

  **D.**  **Vague Time Entries**

A party may not recover for time that is inadequately documented. *Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016). Similarly, a "court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *La. Power & Light Co. v. Kellstrom,* 50 F.3d. 319, 324 (5th Cir. 1995); *see e.g., Thermotek, Inc.*, 2016 WL 6330429, at *10-11 (reducing lodestar by 10% for "overly redacted entries and a lack of billing judgment" after the responding party argued that "the redactions throughout the Declaration ... render[ed] the original description vague."). Vague entries are those

that are "not illuminating as to the subject matter" or "vague as to precisely what was done." *Barrow*, 2005 WL 6789456, at *11 (citation omitted). Examples such as: "revise memorandum," "review pleadings," "review documents," and "correspondence" are sufficiently vague that the court could accept or reject them in a fee application. *Id.* (citation omitted).

But the Court is not convinced that the work challenged here constitutes vague entries. The entries, similar to the block billing discussion above, describe who did what work, when, and include sufficient detail of the tasks allocated. *Bramlett*, 2010 WL 3294248 at *3. Because the Court finds that these tasks are informative of the subject matter, the Court does not make any deductions for vague time entries.

### E. Clerical Tasks

Wyndham identifies several examples of administrative or clerical tasks billed as attorneys' fees. ECF No. 83 at 10-11. Wyndham argues that the Court should not accept these entries and award attorney fees for clerical tasks such as filing court documents, calendaring events, processing billing invoices, and requesting copies of documents. *Id.* Buca disagrees, contending that the fees are customary, thereby presumed to be reasonable. ECF No. 87 at 7; *see Rohrmoos Venture v. UTSW DVA Healthcare, LLP*. 578 S.W.3d 469, 498-99. (Tex. 2019). Buca also asserts that it already took these adjustments into account when requesting fees and applied more than a ten percent discount and reduction to its lodestar amount to account for any inefficiencies.

"Clerical work is not recoverable in an award of attorneys' fees." *Black*, 2014 WL 3534991, at *6. This Court recently concluded that clerical entries such as those listed above should be stricken. *Tovar v. Sw. Bell Tel., L.P.,* No. 3:20-CV-1455-B, 2022 WL 2306926 (N.D. Tex. June 27, 2022) (collecting cases). Wyndham's points are well-taken, and the Court reduces the hours expended after Summary Judgment through trial, by 6.99 hours of Alexendra Wahl's

8

time at an hourly fee of $485; by .55 of an hour of Stafford Brantley's time at $405 per hour; and .66 of an hour of Mr. O'Kane's time at $535 an hour, for a total reduction of 8.2 hours and $3,349.80 in fees for clerical work that Wick Phillips billed at attorneys' rates.

### F.   Duplicative Work

Wyndham provides multiple examples where three attorneys simultaneously represented Buca in similar tasks, resulting in duplicative efforts. ECF No. 83 at 13. Buca contends that its ten percent deduction accounts for any double or triple billing. ECF No. 87 at 8. Further, Buca states that it did not bill for much of Mr. O'Kane's oversight of other lawyers and staff in this case. *Id.* The Court finds that it was unreasonable to bill for all of the time expended by three attorneys in the one-day jury trial of this case. One attorney represented Wyndham at trial, and three lawyers appeared for Buca. While the Court recognizes that multiple lawyers often collaborate in preparing for trial and that there is a need for less-seasoned lawyers to gain trial experience, it is unreasonable for Wyndham to have to pay for all of the hours incurred by Buca's team at trial. Accordingly, there should be a reduction in the amount of time charged by the two additional lawyers. Therefore, the Court reduces the hours expended on the day of trial for Ms. Wahl by half to 7.5 hours at $485 per hour, and for Mr. Brantley by three-fourths to 3.1 hours at $405 per hour for a total deduction of 16.8 hours and $7,404 in fees. The Court notes that there were other instances where multiple attorneys worked on parts of this case simultaneously, but does not find that the time spent or attention to the projects were duplicative to the point of unreasonableness, thereby warranting further reduction.

### G.   Unsuccessful or Unpursued Activities

Wyndham next argues that the Court should reduce the amount of fees awarded for discovery motions not filed, an unsuccessful Motion for Summary Judgment, and the unsuccessful

Motion for Directed Verdict. ECF No. 83 at 17-20. Buca contends that the lease only requires reasonableness to recover fees from Wyndham, not necessity. ECF No. 87 at 4. Success does not necessarily determine reasonableness, and simply because the Court denied both parties' motions for summary judgment does not make the decision to file the motion an unreasonable one. Nor is it automatically unreasonable to spend time preparing a discovery motion that ultimately was not filed. However, the Court does find that the twelve hours of attorney time charged in connection with Buca's Motion for Directed Verdict Motion was not reasonable. In a one-day trial in which it was clear that the Court would submit the case to the jury, that amount of time spent on the motion was unreasonable. Accordingly, the Court reduces the hours spent on that motion by 5.5 of Mr. Brantley's hours at $405 per hour and 1.2 of Mr. O'Kane's hours at $535 per hour for a total reduction of 6.7 hours and $2,869.50 in fees.

After reviewing the record, the arguments of counsel, and applicable legal authority, including the *Johnson* factors, the Court finds that none of the relevant authority weighs in favor of further modifying the lodestar. Although Mr. O'Kane stated that he reduced the claimed attorneys' fees by ten percent and that this adjustment should address any of Wyndham's arguments, the Court does not consider such a general reduction to adequately address the issues noted above involving billing for clerical tasks, duplicative billing, and billing an unreasonable number of hours for the preparation and argument of the Motion for Directed Verdict. Instead, the Court considered the ten percent reduction described by Mr. O'Kane as part of its determination of a reasonable attorneys' fee award in this matter and made the additional adjustments described above.

### H.      Reimbursement of Miscellaneous Costs

Wyndham questions the reasonableness of Buca's requests for reimbursement of costs for online research, vague deliveries, and lunch on the day of the trial. ECF No. 83 at 20. Wyndham contends that it has met its burden to recover these expenses. ECF No. 87 at 3. Courts may award computer-assisted research costs as part of its attorneys' fees awards "if [counsel] normally bills its paying clients for the cost of online research services[.]" *Fluor Corp., v. Citadel Equity Fund Ltd.,* No. 3:08-cv-1556-B, 2011 WL 3820704 at *6 (N.D. Tex. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany and Albany Cnty. Bd. Of Elections,* 369 F.3d 91, 98 (2d Cir. 2004)). However, Buca has not produced any evidence to show that it normally bills its clients for online research.

A party seeking reimbursement of costs for deliveries and other miscellaneous costs also must establish that the amounts requested are reasonable, and the party seeking reimbursement meets that burden only by "presenting evidence that is adequate for the court" to determine what should be included in the reimbursement. *Louisiana Power & Light Co., v. Kellstrom,* 50 F.3d 319, 324 (5th Cir. 1995). Buca has not presented any evidence to establish that its costs associated with delivery charges or lunch on the day of trial were reasonable. Accordingly, the Court subtracts $1,110.26 expenses for online research, $278.74 for vague delivery entries, and $65.37 for lunch during trial for a total reduction of $1,454.37.

### I.      Post Judgment Interest

Federal courts award post judgment interest pursuant to 28 U.S.C. § 1961. The statute grants interest "from the date of the entry of the judgment" at a rate "equal to the weekly average 1-year constant maturity Treasury yield ... for the calendar week preceding ... the date of the judgment." 28 U.S.C. § 1961(a). Post judgment interest compounds annually and is "computed

11

daily to the date of payment." *Id.* § 1961(b). The principal for calculating post judgment interest is "the entire amount of the final judgment," including attorneys' fees, costs, and prejudgment interest. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991). The post judgment interest amount for the calendar week preceding the date of judgment is 4.7 percent. United States District Court for the Northern District of Texas, Publications - Post Judgment Rate (February __, 2023), http://www.txnd.uscourts.gov/publications/pjrate.html (reporting that the current post judgment interest rate from February 18, 2023 to February 24, 2023 is 5.06 percent). Post judgment interest will apply to the total amount of the judgment and will be calculated from the date judgment is entered at the applicable federal rate of 5.06 percent until it is paid in full.

## IV.    CONCLUSION

Based on the testimony of Buca's expert and lead counsel, the Court finds that $40,320.25 is a reasonable attorneys' fee for the initial phases of litigation through the Motion for Summary Judgment filings. The Court agrees with Wick Phillips' ten percent reduction for the latter part of litigation, after the summary judgment stage through the trial. Additionally, there should be further reductions of 8.2 hours for clerical work, 16.8 hours for duplication of effort, and 6.7 hours for time spent in preparing the unsuccessful Motion for Directed Verdict Motion for additional reductions of 31.7 hours and $13,772.30 in fees. The Court reduces the amount of costs to be included in the award by $1,454.37. For the foregoing reasons, the Court **GRANTS** Buca's Motion in part and **ORDERS** Wyndham to pay Buca $120,359.90 in attorney fees, $5,048.61 in costs, and post judgment interest on the entire amount of the judgment (**$125,408.51)** at the current federal rate of **5.06 percent** per annum from the date of judgment until it is paid in full.

It is so **ORDERED** on March 7, 2023.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE